WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Alan McKenzie,<br><br>             Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill, Acting Commissioner of Social Security,<br><br>             Defendant. | No. CV 17-0070-TUC-BPV<br><br>**ORDER** |

Plaintiff Michael Alan McKenzie has filed the instant action pursuant to 42 U.S.C. § 405(g) seeking review of the final decision of the Commissioner of Social Security. (Doc. 1). The Magistrate Judge has jurisdiction over this matter pursuant to the parties' consent. (Doc. 8). *See* 28 U.S.C. § 636(c). Pending before the Court are Plaintiff's Opening Brief (Doc. 14), Defendant's Brief Requesting Remand for Further Administrative Proceedings (Doc. 18), and Plaintiff's Reply Brief (Doc. 19). For the following reasons, the Court remands this matter for an immediate calculation and award of benefits to Plaintiff.

**I.  Procedural History**

In May 2009, Plaintiff filed an application for disability insurance benefits, alleging that he had been disabled since May 1, 2001[1] because of depression and back

---

[1] Plaintiff's initial application reflects an August 1, 2008 disability onset date, (Tr. at 644); however, Plaintiff subsequently indicated that although he stopped working on August 1, 2008, he became unable to work because of his illness, injuries, or conditions on May 1, 2001. (Tr. at 163, 367).

problems. (Transcript/Administrative Record ("Tr.") at 644, 163). After Plaintiff's application was denied initially and upon reconsideration, he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 55, 104, 109). After the hearing, ALJ Larry Johnson directed further development of the record, held a supplemental hearing where Plaintiff and Vocational Expert ("VE") Kathleen McAlpine testified, and entered a decision ("2011 Decision") that Plaintiff was not disabled at step five. (Tr. at 20-28, 58-101). After the Appeals Council denied Plaintiff's request for review of the 2011 Decision, Plaintiff initiated his first civil action in this Court. (Doc. 14 at 3). The Honorable Jacqueline R. Rateau, United States Magistrate Judge, issued a Report and Recommendation that the Commissioner's final decision be reversed and remanded for further proceedings. (Tr. at 508-27). Neither Plaintiff nor the Commissioner objected to the Report and Recommendation. (Tr. at 507). On August 29, 2013, the Honorable Frank R. Zapata, United States Senior District Judge, adopted the Report and Recommendation and judgment was entered accordingly. (Tr. at 505-07).

On November 26, 2013, the Appeals Council remanded Plaintiff's claim to an ALJ for readjudication. (Tr. at 534-37). On April 1, 2014, Plaintiff appeared with counsel and testified at an administrative hearing before ALJ Johnson. (Tr. 449-82). On August 28, 2014, ALJ Johnson decided that Plaintiff was not disabled at step five. (Tr. at 542-52). Plaintiff sought review by the Appeals Council. (Tr. at 395-401). On September 9. 2010, the Appeals counsel remanded Plaintiff's claim to an ALJ for reajudication. (TR. at 557-61).

On May 18, 2016, Plaintiff appeared with counsel and testified before ALJ Peter J. Baum. (Tr. at 483-91). On July 21, 2016, ALJ Baum entered his decision denying Plaintiff's claim at step-five. (Tr. 364-76). Thereafter, the Appeals Council denied Plaintiff's request for review (Tr. at 352-55), making the ALJ's July 21, 2016 decision the Commissioner's final decision for purposes of judicial review. Plaintiff then initiated the instant action.

## II. Plaintiff's Background

Plaintiff was born in 1959 and was 50 years of age on March 31, 2009, the date last insured.[2] (Tr. at 644). Plaintiff completed high school and attended some community college, but did not obtain a degree. (Tr. at 167, 338, 487). Plaintiff worked as a utility worker for the City of Tucson from 1995 to 2001 and as construction laborer from 2004 to 2008. (Tr. at 191, 66). Plaintiff stopped working in August of 2008 when he was terminated for "[e]xcessive absenteeism" because he "missed a lot of work, because I was care-giving for my grandmother and my mom." (Tr. at 66-67, 163, 191). He also missed work due to problems with his neck and back. (Tr. at 67).

Plaintiff testified that depression overwhelmed him and although he had job interviews, he received no offers. (Tr. at 72; *see also* Tr. at 458 ("The depression became more of an issue, and it was overwhelming because of having to be a caregiver.")). Plaintiff first attempted suicide when he was 13 or 14 years old and he has thought frequently of suicide throughout his life. (Tr. at 80). He also attempted suicide when he learned his mother was going to die, and later when his dogs were taken from him for something they "didn't do" and were euthanized because Plaintiff did not have the money to pay required fees. (Tr. at 81-83). He testified that the incident "changed me." (Tr. at 83).

Plaintiff described that his "head starts to spin, and it's like I'm having an anxiety attack or breakdown, because I remember the only other times I felt like this is when I heard about my loved ones dying or something really–even losing my job with the City, I didn't really have that much of a breakdown, but that's what happens." (Tr. at 83-4). Plaintiff has experienced anxiety ever since he was a child. (Tr. at 84). Anxiety has been problem since prior to March 2009. (*Id.*; Tr. at 478). Plaintiff saw various counselors through work and when he had insurance. (Tr. at 86). Plaintiff testified that he "take[s]

---

[2] To be entitled to disability insurance benefits, Plaintiff must establish that he was either permanently disabled or subject to a condition which became so severe as to disable him prior to the date upon which his disability insured status expired. *Johnson v. Shalala,* 60 F.3d 1428, 1432 (9th Cir. 1995) (citations omitted).

- 3 -

anti-depressants still, . . ." but he was also given permission to try not taking them. (Tr. at 72).

At the 2014 hearing after remand by the Court, Plaintiff cried throughout his testimony. (Tr. at 477). He testified that he lives with his wife. (Tr. at 465). Plaintiff spends time playing his guitar. (Tr. at 466; Tr. at 468 (Plaintiff has always played guitar when he was depressed)). Plaintiff goes shopping although he does not like to be out in public. (Tr. at 467, 478). He also described experiencing panic attacks and difficulty thinking. (Tr. at 475-77). Plaintiff tries to help with household chores but his "mind doesn't let me do things. It's just too overwhelming, everything that I've been through in the last ten years or so." (Tr. at 471). Prescribed medications him feel "more suicidal . . . afraid of what's going to happen." (Tr. at 473). The medications also made him feel foggy and forgetful. (*Id.*). None of the antidepressants Plaintiff has tried has stopped him from "being suicidal or being so depressed . . ." like THC. (Tr. at 472-73). He smoked at least one marijuana cigarette throughout the day. (TR. at 473-74).

In May 2016, Plaintiff testified that he spent his time playing guitar, reading, doing some babysitting of his grandchildren, and walking his dog. (Tr. at 488). He no longer used marijuana. (*Id.*).

**III. The ALJ's Decision**

    **A. Claim Evaluation**

Whether a claimant is disabled is determined pursuant to a five-step sequential process. *See* 20 C.F.R. §§404.1520. To establish disability, the claimant must show that: (1) he has not performed substantial gainful activity since the alleged disability onset date ("Step One"); (2) he has a severe impairment(s) ("Step Two"); and (3) his impairment(s) meets or equals the listed impairment(s) ("Step Three"). *Dominguez v. Colvin*, 808 F.3d 403, 405 (9th Cir. 2016). If the claimant satisfies Steps One through Three, then he is disabled and entitled to benefits. *Id.*. If the claimant has a severe impairment that does not meet or equal the severity of one of the ailments listed, the ALJ then proceeds to Step Four, which requires the ALJ to determine the claimant's residual functioning capacity

(RFC).³ *Id.* After developing the RFC, the ALJ must determine whether the claimant can perform past relevant work: "if not, then at step five, the government has the burden of showing that the claimant could perform other work existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience." *Id.*

### B. The ALJ's Findings in Pertinent Part

The ALJ found that although Plaintiff worked after the May 1, 2001 alleged disability onset date, that work activity did not rise to the level of substantial gainful activity. (Tr. at 367). The ALJ determined that through the date last insured, Plaintiff "had the following severe impairment: myofascial pain status post motor vehicle accident of September 2827 [sic], 2002 (20 CFR 404.1520(c))" (Tr. at 368). The ALJ found that Plaintiff had the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) except that he is limited to frequent use of his feet, hands, and arms, and no more than frequent exposure to unprotected heights, operating mechanical parts, operating a motor vehicle, humidity and wetness, dusts, odors, fumes, and other pulmonary irritants, extreme cold, extreme heat, and vibrations.

(Tr. 368). The ALJ also found that Plaintiff was unable to perform his past work as a utility worker. (Tr. 374). The ALJ relied on the Medical-Vocational Guidelines Rules 203.22 and 203.29 as a "framework" without vocational-expert testimony to determine that Plaintiff was not disabled. (Tr. at 375). Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act from May 1, 2001, the alleged onset date, through March 31, 2009, the date last insured. (Tr. at 376).

### IV. Discussion

Plaintiff argues that the substantial evidence of record does not support the ALJ's evaluation of Plaintiff's mental condition or the ALJ's credibility finding. Plaintiff also argues that the ALJ improperly: failed to rely upon vocational expert testimony; applied an incorrect and stricter definition of "disability" than required by the Social Security

---

³ "The RFC is defined as 'the most' the claimant can do, despite any limitations." *Dominguez*, 808 F.3d at 405.

- 5 -

Act; and failed to provide germane reasons for rejecting third-party statements.

Defendant "concedes that the ALJ erred in evaluating (1) Plaintiff's impairments; (2) the medical opinion evidence, in particular the opinion of James Rau, Ph.D.; (3) Plaintiff's symptoms and subjective complaints; (4) the lay witness evidence; (5) Plaintiff's residual functional capacity; and (6) Plaintiff's ability to perform other work at step five by not obtaining vocational expert testimony." (Doc. 18 at 1-2). Although Defendant concedes all areas of error identified by Plaintiff, Defendant urges the Court to remand the matter for further proceedings to remedy defects rather than award benefits.

## V.     Remand for Award of Benefits

"A district court may 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing,' *Treichler v. Comm'r of Soc.*[] *Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)) (alteration in original), but 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation,' *id*. (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985))." *Dominguez,* 808 F.3d at 407. Remand for an award of benefits is appropriate only where the following three prerequisites are met:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[4]

*Garrison v. Colvin,* 759 F.3d 995, 1020 (9th Cir. 2014) (footnote and citations omitted). In evaluating whether further administrative proceedings would be useful, the court "consider[s] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to

---

[4] The Ninth Circuit has noted that the third factor "naturally incorporates what we have sometimes described as a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made." *Garrison,* 759 F.3d at 1020 n. 26 (citing *Smolen v. Chater,* 80 F.3d 1273, 1292 (9th Cir. 1996)).

1 benefits is clear under the applicable legal rules." *Treichler*, 775 F.3d at 1103-04.

2 "'[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded' for further proceedings." *Trevizo v. Berryhill,* 871 F.3d. 664, 682 (9th Cir. 2017) (quoting *Garrison,* 759 F.3d at 1019); *see also Treichler,* 775 F.3d at 1101, n.5 (it is an abuse of discretion to remand "for an award of benefits when not all factual issues have been resolved.") (citation omitted). Moreover, even when all three factors of the test are met, the "district court retains the flexibility to 'remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Treichler,* 775 F.3d at 1102 (quoting *Garrison,* 759 F.3d at 1021).

The crux of the parties' arguments involves Plaintiff's allegation of mental impairment and the 2011 opinion of agency examining neuropsychologist James Rau, Ph.D. As an initial matter, Defendant asserts that if this action is remanded for further proceedings, "the Appeals Council has specifically agreed to determine whether the record supports a finding of disability prior to sending the case to an ALJ." (Doc. 18 at 4). However, the record reflects that the Appeals Council has previously declined to overrule the ALJ's opinion despite Plaintiff's argument, *inter alia,* that the ALJ's opinion was not supported by substantial evidence in light of examining Dr. Rau's uncontroverted opinion. (Tr. at 352-53, 357-59). Plaintiff also persuasively points out that Defendant's proposed "relief is illusory and even inexplicable[]" given Defendant's position denying that Plaintiff is disabled. (Doc. 19 at 8). At this point, the proper analysis is whether the credit-as-true standard is satisfied with regard to Dr. Rau's opinion.

Prior to seeing Dr. Rau, Plaintiff presented to La Frontera Center in February 2010 upon referral by his probation officer for depressive symptoms. (TR. at 311). Plaintiff stated that he was serving probation for cultivation and production of marijuana and that he stopped using marijuana the previous year after being placed on probation. (*Id.*; *see also* Tr. at 307 (Plaintiff grew the marijuana because he could not afford to purchase it)). Plaintiff reported feeling no pleasure from life, hopelessness, worthlessness, grief, and

regret, and that the marijuana had helped him but he stopped using it "a year ago." (Tr. at 311, 317 (capitalization omitted)). He attempted suicide in 1997 and 2009, and thought about hurting himself on a daily basis. (Tr. at 314). Plaintiff stated that his symptoms began in 1995 after a series of deaths, including both grandmothers and his mother, and he grieves for them daily. (Tr. at 311, 317). He has difficulty letting go. (Tr. at 311). Plaintiff reported that he went to counseling when his mother passed away and that he took medication in 2001 for depression. (*Id.*). Marijuana also helped his symptoms when he was using it. (*Id.*). Plaintiff also stated that when his dogs were removed by animal control and were euthanized in 2009, he took their death "really hard and [he] reports that he has intrusive thoughts and memories of his dogs." (Tr. at 305, 317) (capitalization omitted).

Plaintiff did not make good eye contact and cried throughout the appointment. (Tr. at 316). His thought process was "rambling" and his thought content was reported as: "depressive, preoccupations, thoughts of self harm." (*Id.*) (capitalization omitted). His judgment and impulse control were limited. (Tr. at 316-17). Plaintiff was diagnosed with major depressive disorder and cannabis abuse. (Tr. at 318). His global assessment of functioning score was 53, which signified "[m]oderate symptoms[.]" (*Id.*).

In March 2010, Plaintiff continued to present at La Frontera as depressed. (Tr. at 310). His judgment was fair, insight was superficial, and he was "[s]omewhat withdrawn[.]" (*Id.*). He was prescribed bupropion. (*Id.*).

An April 2010 mental status exam at La Frontera reflects that Plaintiff was tearful, helpless and had fleeting suicidal thoughts. (Tr. at 307). His symptoms were "[m]ostly depressive[.]" (*Id.*). His insight and judgment were fair. (*Id.*). Because of adverse side-effects, bupropion was replaced with Lexapro. (Tr. at 308). Diagnosis included major depressive disorder/recurrent and cannabis abuse. (Tr. at 307).

In May 2010, Plaintiff exhibited halting speech, tangential thinking, depressed mood and his affect was described as "weeping". (Tr. at 305). His insight and judgment were determined to be "very poor". (*Id.*). Pursuant to Plaintiff's request, he was

prescribed Cymbalta in place of Lexapro because the Lexapro made him feel lethargic. (*Id.*). The record also reflects that Plaintiff attended some group therapy at La Frontera in May 2010. (Tr. 300, 301, 306).

In February 2011, Plaintiff presented to Dr. Rau for a neruopsychologic status examination at the request of the ALJ. (Tr. at 93-97, 324-31). In preparation for the examination, Dr. Rau reviewed medical, psychiatric, and third-party report documents. (Tr. at 324; *see also* Tr. at 328 (detailed description of 49 pages of documents from 2002 through January 2011 that Dr. Rau reviewed)). During the examination, which lasted approximately three-hours, Dr. Rau administered the Weschler Adult Intelligence Scale-IV ("WAIS-IV"), the Weschler Memory Scale-IV, and the Trailmaking tests. (Tr. at 324).

Dr. Rau observed constricted affect, tearfulness, and profound nervousness. (Tr. at 325). Plaintiff described episodic and ongoing suicidal ideation. (*Id.*). Plaintiff's thought process and content, orientation, insight, judgment, expressive and receptive language abilities, cooperation, and recall were all unremarkable. (Tr. at 325). However, Plaintiff was "ruminative and at times [Dr. Rau] would have to pull him off of going on about a particular distress or anxiety in his life." (*Id.*). Dr. Rau found that Plaintiff's "attitude was colored by his anxiety, as was his rapport, but he did relate to me. . . . He was just very very nervous." (*Id.*).

Intelligence testing showed a full scale IQ of 99, the high average to low average range. (Tr. at 328). The testing suggested that Plaintiff was "showing quite a bit of inefficiency . . . with his memory. . . . He is really showing quite a bit of inefficiency across the board."[5] (Tr. at 330). Dr. Rau diagnosed major depressive disorder, severe without psychosis, and generalized anxiety disorder. (*Id.*).

Dr. Rau completed a Psychological/Psychiatric Medical Source Statement. (Tr. at

---

[5] Dr. Rau recognized the possibility that motor vehicle accidents Plaintiff has been involved in may have affected brain integrity. (Tr. at 330). He went on to state: "On the other hand, it is possible that his memory deficits are a function of his high level distress and anxiety and absent any CNS level base complications." (*Id.*).

- 9 -

1  332-34). He indicated that Plaintiff's understanding and memory were moderately
2  limited. (Tr. at 332). Although Plaintiff could understand basic instructions if
3  information was well-organized, if it was "not, then he is showing quite a bit of
4  inefficiency and he is very deficient with his registration of any visual-spatial type of
5  information." (*Id.*). Plaintiff's sustained concentration and pace were also moderately
6  limited based on Dr. Rau's opinion that "he will have great difficulty staying focused for
7  any extended period of time . . . because of at least episodically getting pulled off task
8  because of anxiety, worry, fretting or immediate depression." (*Id.*). Plaintiff's social
9  interaction abilities were also moderately limited based on Dr. Rau's opinion that
10 Plaintiff "will have great difficulty dealing with criticism. I think his quite prominent
11 nervousness and anxiety may be easily noticed by others and make them ill at ease
12 around him." (*Id.*). Plaintiff's ability to adapt was not significantly limited, although Dr.
13 Rau felt that Plaintiff would "have great difficulty staying focused in any environment for
14 any extend period of time due to his profound nervousness and anxiety." (*Id.*).

   Dr. Rau also completed a Medical Source Statement of Ability to do Work-
15 Related Activities (Mental). (Tr. 334-36). Dr. Rau indicated that due to memory
16 problems, high anxiety and depression which were "effecting cognitive efficiency",
17 Plaintiff was: moderately to markedly limited in his abilities to understand, remember,
18 and carry out complex instructions; moderately limited in his abilities to carry out simple
19 instructions, make judgments on complex work-related decisions, interact appropriately
20 with the public and supervisors and coworkers, and respond appropriately to usual work
21 situations and to changes in a routine work setting; and mildly limited in his abilities to
22 understand and remember simple instructions and make judgments on simple work-
23 related decisions. (Tr. at 334-35). Dr. Rau went on to opine that Plaintiff's limitations
24 were first present "3-4 years ago . . . 08-09[.]"[6] (*Id.* at 335).

---

[6] Dr. Rau's notation appears on the form as follows:
　　3-4 years ago
　　　　↓
　　　08-09

Dr. Rau was not the only examining source to diagnose Plaintiff's depression. For example, in March 2011, examining agency physician Jerome Rothbaum, M.D., a doctor of internal medicine, also found that Plaintiff "both displayed and indicated profound depression and suicidal ideation on a long and continuing basis." (Tr. at 337). Dr. Rothbaum's diagnoses included: "Depression. This is by all odds the most significant impairment that his claimant presents with[]"; myofascial cervicalgia; and low back pain, myofascial in origin. (Tr. at 339).

With regard to the first factor of the credit-as-true standard, the Court concludes that there is no need to further develop the record and, thus, additional administrative proceedings are not required. ALJ Johnson, in his 2011 Decision determined that Plaintiff's severe impairments included depression. (Tr. at 22). With regard to mental limitations, ALJ Johnson limited Plaintiff to simple, unskilled work. (Tr. at 24). In 2013, the Court found that Dr. Rau's opinion was not controverted and, therefore, could only be rejected for clear and convincing reasons, which ALJ Johnson did not provide. (Tr. at 522). The Court remanded this matter for the ALJ, *inter alia,* to "reevaluate Dr. Rau's non-exertional limitations . . . ." (Tr. at 526). In the decision currently under review, ALJ Baum gave Dr. Rau's opinion "partial [sic]: it is partially consistent with the medical evidence of record. Although Dr. Rau is a qualified expert who had the opportunity to evaluate, test, observe, and examine the claimant face to face, he only had a 'snapshot' of the claimant's functioning and limitations, and his opinion is based largely on the claimant's subjective statements." (Tr. at 374). Despite granting partial weight to Dr. Rau's opinion, ALJ Baum, unlike ALJ Johnson before him, did not find that Plaintiff had a severe mental impairment, nor did he include any mental limitations in the RFC assessment. Defendant concedes that ALJ Baum erred in evaluating Plaintiff's impairments, "the medical opinion evidence, in particular the opinion of James Rau, Ph.D. . . .", and Plaintiff's RFC assessment, in addition to other matters. (Doc. 18 at 1-2).

---

(Tr. at 355).

As Plaintiff points out, Defendant has not presented any argument that a reasonable ALJ could find that Plaintiff did not have the medically determinable mental impairments that Dr. Rau diagnosed. Instead, Defendant concedes that the ALJ erred in evaluating Plaintiff's impairments. Although Defendant argues that the matter should be remanded, in part, for reevaluation of Dr. Rau's opinion, Defendant does not contend that on remand an ALJ could identify clear and convincing reasons to reject Dr. Rau's opinion. Instead, Defendant asserts that remand for further proceedings is necessary because Dr. Rau's opinion that Plaintiff had the identified limitations "'3-4 years ago' in 2008-2009[]" is "vague about when Plaintiff's mental health limitations began." (Doc. 18 at 5). Dr. Rau reviewed 49 pages of records covering 2002 through January 2011. (Tr. at 328). He also performed psychometric testing. Based on his record review, psychometric testing, and examination of Plaintiff, Dr. Rau's opinion supports the conclusion that Plaintiff was disabled prior to his March 31, 2009 date last insured. Although the record establishes that Plaintiff's limitations existed prior to his date last insured, Plaintiff does not address the disability onset date, an issue which Defendant raises. "The medical evidence serves as the primary element in the onset determination." Social Security Ruling ("SSR") 83-20, 1983 WL 31249, at *2. On February 27, 2011, Dr. Rau stated that Plaintiff's limitations were first present "3-4 years ago . . . 08-09." (Tr. at 335). Three to four years prior to Dr. Rau's evaluation was actually February 2007 to February 2008. The Court interprets Dr. Rau's statement to indicate that Plaintiff's onset date occurred sometime between February 2007 and February 2009. Accordingly, giving Defendant the benefit of any doubt, the Court finds that Plaintiff's onset date is December 31, 2008. Such a finding is consistent with the record evidence, including Dr. Rau's opinion and Plaintiff's suicide attempt a few months later in March 2009. (*See* Tr. at 328 (discussing March 2009 suicide attempt)).

Defendant also asserts that further evaluation of Plaintiff's credibility is necessary because "Plaintiff's credibility was necessarily linked to the evaluation of Dr. Rau's opinion—which creates serious doubt that Plaintiff was, in fact so impaired as to be

disabled." (Doc. 18 at 6-7). The ALJ discounted Dr. Rau's opinion in part because it was "based largely on the [Plaintiff's] subjective statements[,]" and the ALJ found that Plaintiff was not entirely credible. (Tr. at 374). However, Defendant has not only conceded that the ALJ erred in evaluating Dr. Rau's opinion, but Defendant has also conceded that the ALJ erred in evaluating Plaintiff's credibility. Moreover, an ALJ may discount a doctor's opinion where the opinion is based to a large extent on a claimant's subjective symptoms. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008). "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin,* 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1199-200 (9th Cir. 2008)). Additionally, because diagnoses of mental impairments "will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient . . . the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill,* 869 F.3d 1040, 1049 (9th Cir. 2017). Here, although Dr. Rau noted Plaintiff's self-report of his symptoms, Dr. Rau recorded several of his own clinical evaluations of Plaintiff, including: profound nervousness, anxiety, constricted affect, tearfulness, and the need to re-direct Plaintiff when he became "overly ruminative about a problem . . . ." (Tr. at 325, 329). Dr. Rau also noted that Plaintiff's "reports [are] consistent with the documents provided. These go back about a decade. The neuropsychologic profile and data are absent any indication of effort manipulation. So what I am reporting I think is reliable—given the data I have at hand." (Tr. at 329). Dr. Rau also performed his own psychometric testing of Plaintiff to arrive at his conclusions. Nor did Dr. Rau find any indication of effort manipulation during the tests he administered to Plaintiff. (*Id.*).

"An ALJ may reject an examining physician's opinion if it is contradicted by clinical evidence." *Ryan,* 528 F.3d at 1199 (citing *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005)). However, "an ALJ does not provide clear and convincing reasons

- 13 -

for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Id.* at 1199-1200 (citing *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir.2001)). Nothing in the record suggests that Dr. Rau disbelieved Plaintiff's description of his symptoms or that Dr. Rau relied on those descriptions more heavily than his own clinical observations and psychometric test results to reach his conclusions about Plaintiff's limitations. *See Id.* at 1200 (holding that the ALJ failed to provide clear and convincing reasons for rejecting examining physician's opinion because it was based too heavily on the plaintiff's subjective complaints). To the contrary, Dr. Rau stated that he believed his findings were reliable. (Tr. at 329). The ALJ offered no basis for his statement that Dr. Rau's opinion was based more heavily on Plaintiff's self-reports. *See Ghanim,* 763 F.3d at 1162-63 (ALJ improperly discounted opinions of plaintiff's treating as relying on the plaintiff's self-reports). Nor has Defendant cited to evidence that would cast serious doubt on Dr. Rau's opinion.

Nor is remand necessary to obtain testimony from a vocational expert. Vocational Expert McAlpine testified at the June 7, 2011 hearing that if the limitations assessed by Dr. Rau were accepted, no work would be available. (Tr. at 64-65).

As to the second factor of the credit-as-true standard, Defendants concede that the ALJ failed to provided legally sufficient reasons for rejecting Dr. Rau's opinion, as well as other matters. Additionally, the third factor also favors remand for an award of benefits. In light of VE McAlpine's testimony, if Dr. Rau's opinion is credited as true, the ALJ would be required to find Plaintiff disabled on remand. *Cf. Trevizo,* 871 F.3d at 683 (If the opinion at issue was credited as true, the opinion would establish that plaintiff "is disabled, because the VE testified that someone with [plaintiff's] limitations would be unable to find full-time work.").

"Moreover, the 'exceptional facts' of this case, *Terry v. Sullivan,* 903 F.2d 1273, 1280 (9th Cir. 1990), counsel strongly in favor of remanding for immediate payment of

- 14 -

benefits." *Trevizo,* 871 F.3d at 683. Plaintiff first sought benefits almost nine years ago. *See Trevizo,* 871 F.3d at 683 (remanding for award of benefits where the plaintiff, among other things, had been waiting over seven years for a benefits determination); *Smolen,* 80 F.3d at 1292 (remanding for award of benefits where the plaintiff has "already waited over seven years for her disability determination."). At his current age of 59, he is considered a "[p]erson of advanced age."[7] 20 C.F.R. § 404.1563(e). The matter has been remanded once, in part, for the ALJ to properly evaluate Dr. Rau's opinion which, despite two post-remand hearings and decisions, the ALJs have failed to do. (*See* Tr. at 522 (finding the ALJ failed to cite clear and convincing reasons for declining to adopt Dr. Rau's uncontroverted opinion); Doc. 18 at 1-2 (Defendant conceding the ALJ erred with regard to Dr. Rau's opinion)). Nor has Defendant "pointed to evidence in the record 'that the ALJ overlooked' and explained 'how that evidence casts into serious doubt' the claimant's claim to be disabled." *Dominguez,* 808 F.3d at 407-08 (quoting *Burrell v. Colvin,* 775 F.3d 1133, 1141 (9th Cir. 2014)). On the instant record, "[a]llowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication[]", *Benecke v. Barnhart,* 379 F.3d 587, 896 (9th Cir. 2004), as well as delay the receipt of benefits that are due.

**VI. Conclusion**

For the foregoing reasons, no outstanding issue remains to be resolved and it is clear the ALJ would be required to find Plaintiff disabled. The decision of the Commissioner is reversed and this matter is remanded for the immediate award of benefits consistent with this Order. Accordingly,

IT IS ORDERED that the Commissioner's decision denying benefits is REVERSED.

IT IS FURTHER ORDERED that this matter is REMANDED for an immediate

---

[7] Under the regulations, "[w]e consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older). See § 404.1568(d)(4)." 20 C.F.R. § 404.1563(e).

calculation and award of benefits to Plaintiff consistent with this Order.

The Clerk of Court is directed to enter Judgment accordingly and close its file in this matter.

Dated this 27th day of March, 2018.

_____
Bernardo P. Velasco
United States Magistrate Judge